```
                 UNITED STATES DISTRICT COURT             FILED
                 NORTHERN DISTRICT OF ALABAMA         00 AUG 11 AM 11: 27
                       EASTERN DIVISION
                                                       U.S. DISTRICT COURT
DERRICK ANDERSON,              )                        N.D. OF ALABAMA

         Petitioner,           )

vs.                            )         Civil Action No. 99-S-1910-E

WARDEN R. WILEY,               )                          ENTERED

         Respondent.           )                          AUG 11 2000
```

### MEMORANDUM OF OPINION

Petitioner, Derrick Anderson, was convicted in the United States District Court for the Northern District of Illinois of possessing a listed chemical knowing, or having reasonable cause to believe, that it would be used to manufacture a controlled substance, in violation of 21 U.S.C. § 841(d)(2). He was sentenced to 120 months of imprisonment on September 10, 1993, but was not committed to the custody of the Bureau of Prisons until October 18, 1993.[1] Allowing credit for good conduct time and periods of prior jail custody, defendant's current statutory release date is October 3, 20<u>01</u>.[2]

In addition, however, when enacting the Violent Crime Control and Law Enforcement Act, Congress directed the Bureau of Prisons to

---

[1] *See* "Public Information Inmate Data (As of 07-10-2000)," attached to the Declaration of Alex Borrero, Ph.D., Drug Abuse Treatment Coordinator at the Federal Correctional Institution in Talladega, Alabama, filed July 13, 2000 (doc. no. 39) (hereafter, "Borrero Declaration"), at page 003 ("DATE COMMITTED").

[2] *Id.* at 004 ("STATUTORY RELEASE DATE (CURRENT)").

"make available appropriate substance abuse treatment for each prisoner the Bureau determines has a treatable condition of substance addiction or abuse." 18 U.S.C. § 3621(b) (last sentence); *see also id.* § 3621(e)(1). As an incentive for prisoners to enroll in and successfully complete such programs,[3] Congress provided the Bureau of Prisons discretionary authority to reduce an inmate's term of imprisonment by as much as one year:

> The period a prisoner convicted of <u>a nonviolent offense</u> remains in custody after successfully completing a treatment program <u>may</u> be reduced by the Bureau of Prisons, <u>but such reduction may not be more than one year from the term the prisoner must otherwise serve</u>.

*Id.* § 3621(e)(2)(B) (emphasis supplied). At least four aspects of that statutory language are worthy of note. First, Congress did not define the phrase, "a nonviolent offense." Second, by use of the auxiliary verb "may" (which means that the subject of the sentence "has discretion to; is permitted to"[4]), instead of the imperative term "shall" (which "imposes a duty on the subject of the sentence"[5]), Congress did not <u>mandate</u> that a prisoner's sentence be reduced by the Bureau of Prisons, even upon successful completion of a substance abuse treatment program. Third, Congress did not define criteria for determining when an inmate had "successfully complet[ed] a treatment program," but instead

---

[3] *See* 18 U.S.C. § 3621(e)(2) (heading).

[4] Bryan A. Garner, A Dictionary of Modern Legal Usage 942 (2d ed. 1995).

[5] *Id.* at 940.

2

delegated discretionary authority to make such determinations to the Director of the Bureau of Prisons. *See* 18 U.S.C. § 3621(e)(2)(A). Finally, beyond the statement that "such reduction may not be more than one year from the term the prisoner must otherwise serve," Congress did not specify criteria governing the exercise of discretion by the Bureau of Prisons when determining whether, and to what extent, a particular prisoner's sentence "may be reduced."

In any event, petitioner enrolled in a residential drug abuse program on March 29, 1999,[6] while incarcerated at the Federal Correctional Institution in Talladega, Alabama. During the course of his 500 hours of therapy — which petitioner successfully completed on February 8, 2000[7] — the Bureau of Prisons advised him that he was not eligible for early release due to the fact that the sentencing court had enhanced his base offense level pursuant to United States Sentencing Guidelines § 2D1.11(b)(1) (providing that, "[i]f a dangerous weapon (including a firearm) was possessed, increase [the base offense level] by 2 levels"). That decision was based upon 28 C.F.R. § 550.58, specifying that an inmate who "successfully completes a residential drug abuse treatment program

---

[6] *See* Borrero Declaration ¶ 6, at 2 ("Mr. Anderson was placed on the waiting list on November 23, 1998[,] and entered on the RDAP on March 29, 1999. His placement on the waiting list and his start date were not affected in any way by his early release eligibility determination.") (emphasis supplied).

[7] *Id.*

... may be eligible ... for early release by a period not to exceed 12 months," provided the inmate was not been convicted of a felony offense that "involved the carrying, possession, or use of a firearm or other dangerous weapon...."[8]

The Bureau's decision triggered the present action, in which petitioner seeks the issuance of a writ of habeas corpus pursuant to 28 U.S.C. § 2241 et seq. United States Magistrate Judge Paul W. Greene submitted a report to this court recommending that the petition be granted.

> Petitioner contends that the blanket denial of early release consideration to inmates with two level sentence enhancements violates the decision i[n] Byrd v. Hasty, 142 F.3d 1395 (11th Cir. 1998). In Byrd, the court concluded "that the BOP exceeded its statutory authority

---

[8] 28 C.F.R. § 550.58(a)(1)(vi)(B) provides, in part, that:

An inmate who was sentenced to a term of imprisonment pursuant to the provisions of 18 U.S.C. Chapter 227, Subchapter D for a nonviolent offense, and who is determined to have a substance abuse problem, and successfully completes a residential drug abuse treatment program during his or her current commitment may be eligible, in accordance with paragraph (a) of this section, for early release by a period not to exceed 12 months.

   (a) **Additional early release criteria**.

      (1) As an exercise of the discretion vested in the director of the Federal Bureau of Prisons, the following categories of inmates are not eligible for early release:

. . .

      (vi) Inmates whose current offense is a felony:

. . .

      (B)    That involved the carrying, possession, or use of a firearm or other dangerous weapon or explosives (including any explosive material or explosive device), ....

4

when it categorically excluded from eligibility those inmates convicted of a non-violent offense who received a sentencing enhancement for possession of a firearm. <u>The BOP's interpretation of the 18 U.S.C. § 3621(e)(2)(B) is simply in conflict with the statute's plain meaning</u>." (Emphasis added.)  142 F.3d at 1398.  On December 10, 1999 the Court of Appeals for the Eleventh Circuit invalidated the post-*Byrd v. Hasty* Bureau of Prisons regulation found at 28 C.F.R. § 550.58(a)(1)(vi)(B). *Kilpatrick v. Houston*, 197 F.3d 1134 (11th Cir. 1999) [(*per curiam*), *affirming* 36 F. Supp. 2d 1328 (N.D. Fla. 1999)].

Respondent concedes that "*Kilpatrick* appears to control the case at bar."  (See document #16).

Based on respondent's concession, the magistrate judge RECOMMENDS that petitioner's petition for writ of habeas corpus be GRANTED to the extent that the Bureau of Prisons must consider petitioner's request for a sentence reduction upon petitioner's successful completion of the drug abuse program without regard to the two level enhancement for possession of a firearm.[9]

Respondent did not object "to the factual findings or legal analysis of the Magistrate Judge," but nevertheless asked this court to delay its decision until the Eleventh Circuit ruled upon the government's then pending petitions for rehearing, or rehearing *en banc* in *Kilpatrick v. Houston*, 197 F.3d 1134 (11th Cir. 1999), the case "upon which the Magistrate relie[d] and which controls the case at bar (or will upon finality)."[10]

The government's petitions for rehearing, or rehearing *en banc*

---

[9] Magistrate Judge's Findings and Recommendation (doc. no. 23), at 2-3 (footnote omitted) (emphasis in original).

[10] Respondent's Objection to Magistrate Judge's Report and Recommendation (doc. no. 25), at 1.

5

were denied on March 16, 2000.[11] The following day, however, the Eleventh Circuit *sua sponte* entered an order in nine pending appeals, saying that all further proceedings "shall be stayed until issuance of the mandate in 99-10862" (*i.e., Kilpatrick*), and further providing that, "[o]n its own motion, the Court STAYS all future appeals raising the same issues as those presented in 99-10862."[12] On or about March 22, 2000, the government filed a motion requesting the Eleventh Circuit to stay issuance of the mandate in *Kilpatrick* until June 14, 2000, the date upon which the time for filing a petition for *certiorari* with the Supreme Court would expire.[13] In the meantime, the Supreme Court granted *certiorari* in *Lopez v. Davis*, __ U.S. __, 120 S.Ct. 1717, 146 L.Ed.2d 640 (2000) (Table, No. 99-7504), to review the decision of the Eighth Circuit in *Bellis v. Davis*, 186 F.3d 1092 (8th Cir. 1999). Unlike the Eleventh Circuit's decision in *Kilpatrick*, the Eighth Circuit held in *Bellis* that 18 U.S.C. § 3621(e)(2) vests the Bureau of Prisons with broad discretion to determine who among the statutorily eligible class of inmates convicted of "nonviolent offenses" are appropriate candidates for early release and, accordingly, the Bureau did not abuse its discretion when excluding from

---

[11] *Kilpatrick v. Houston*, 211 F.3d 596 (11th Cir. 2000) (Table, No. 99-10862).

[12] *See* Respondent's Submission of Recent Authority filed May 4, 2000 (doc. no. 30), Exhibit E, at 4.

[13] *Id.*, Exhibit D.

consideration prisoners, such as petitioner herein, who had received an enhancement under Sentencing Guidelines § 2D1.11 for possession of a weapon during commission of a federal drug offense.

In view of those developments, this court entered a memorandum opinion on May 12, 2000, saying in part:

> If this court were writing on a clean slate, it would adopt the recommendation of the Magistrate Judge, and follow the decision of the district court in *Kilpatrick v. Houston*, 36 F. Supp. 2d 1328 (N.D. Fla.) (Hinkle, J.), aff'd, 197 F.3d 1134 (11th Cir. 1999), by granting the writ of habeas corpus. In the opinion of this court, the Bureau of Prisons abused its discretion by categorically excluding prisoners from eligibility for early release based solely on Guidelines § 2D1.11(b)(1) sentencing enhancements. *See Byrd v. Hasty*, 142 F.3d 1395 (11th Cir. 1998). The addition of enhancements for possession of a weapon is not the factual, functional, or legal equivalent of "convict[ion] of a []violent offense." 18 U.S.C. § 3621(e)(2)(B).
>
> Even so, in view of the order of the Eleventh Circuit, staying "all future appeals raising the same issues as those presented in 99-10862 [*i.e.*, *Kilpatrick*]," this court must await issuance of the mandate in that case before granting habeas relief here. [14]

The governmental-appellee in *Kilpatrick* filed a petition for *certiorari* with the United States Supreme Court on June 14, 2000,[15] and the Eleventh Circuit stayed issuance of the mandate pending Supreme Court action on that petition.[16]

---

[14] Memorandum of Opinion entered May 12, 2000 (doc. no. 31), at 5-6.

[15] *See* 68 USLW 3001 (No. 99-2008).

[16] *See* Government's Status Report filed July 10, 2000 (doc. no. 36) ¶ 3, at 2.

Nevertheless, in the wake of the *Kilpatrick* decision, the Bureau of Prisons issued an operations memorandum applicable to prisoners incarcerated in correctional facilities within the Eleventh Circuit,[17] and reopened petitioner's administrative file. He was "determined to be provisionally eligible to receive up to one year off of his sentence if he successfully completes the residential Drug Abuse Program,"[18] and

> was released to a halfway house for the final component of the Residential Drug Abuse Program ("RDAP") on June 28, 2000. ... The RDAP requires that a resident complete 180 days in a halfway house prior to early release under 18 U.S.C. [§] 3621(e)(2)(B).... Assuming that the petitioner successfully completes the halfway house 180 days stay without incident, the petitioner will be released on or about December 24, 2000, approximately 6 months (193) days earlier than if he had not received 3621(e)(2)(B) early release consideration....[[19]]

Thus, petitioner effectively has received the relief he originally sought when filing the instant petition for writ of habeas corpus:  specifically, eligibility for a reduction in

---

[17] *See* the attachments to the Government's Status Report filed June 9, 2000 (doc. no. 35).

[18] *Id.* (Declaration of J.M. Merkle, Administrative Remedy Coordinator at the Federal Correctional Institution in Talladega, Alabama ¶ 4, at 2).

[19] Government's Status Report filed July 10, 2000 ¶ 1, at 1-2. *See also* Borrero Declaration ¶ 8, at 2:

> If Mr. Anderson successfully completes the transitional services portion of the RDAP he will receive 193 days off his sentence which is the maximum amount of time he can receive. Mr. Anderson's original good conduct time release was July 3, 2001. His projected release date given successful completion of the RDAP is December 24, 2000. Failure to successfully complete the program will result in Mr. Anderson's return to FPC Talladega and completion of his full sentence.

sentence based upon "successful completion" of a residential substance abuse treatment program, notwithstanding the imposition of a two level sentencing enhancement pursuant to Guidelines § 2D1.11.

The only issue remaining to be addressed is one that has not been raised by the petitioner herein, but a point that nevertheless has been discussed by the government and other district courts: that is, "the question of whether the 180 day halfway house residency requirement is to be abbreviated."[20]

The government contends that drug-free residency in a halfway house for a period not exceeding 180 days "is an essential element of the program, needed to assist Mr. Anderson in not engaging in further substance abuse when released."[21]

> Bureau of Prisons policy ordinarily permits placement of inmates in a Community Corrections Center (CCC) for a maximum of 180 days. For those inmates who are completing the RDAP, policy strongly encourages CCC placement for a full 180 [day] period. This permits inmates to undergo the community-based transitional drug treatment component of the RDAP, in order to make a successful transition from institution life to living in open society. Policy emphasizes that institution staff should aim to maximize the inmate's participation in CCC placement rather than to maximize sentence reduction under 18 U.S.C. § 3621(e).
>
> Some inmates find they can avoid substance abuse while incarcerated, but will relapse in the community, where substances to abuse are more readily available. Staff

---

[20] Government's Status Report filed July 10, 2000 ¶ 4, at 2.
[21] Borrero Declaration, at 2.

supervision and observation at a CCC, while the inmate adjusts to less structured situations, is an important part of the overall drug abuse treatment program. CCC placement for 180 days provides time for assessment of an inmate's ability to successfully apply the information and knowledge gained through the RDAP.

In addition, the 180 day period provides time for the inmate to develop drug abuse avoidance skills and behaviors in open society. A 180 day CCC placement allows the inmate to accumulate confidence-building experiences in rejecting drug or alcohol abuse opportunities, but with some measure of official supervision.[22]

District courts within the Eleventh Circuit have split on the issue of whether the 180 day halfway house residency period should be abbreviated. *Compare Miller v. Collins*, No. 99-A-740-N (M.D. Ala. filed Mar. 31, 2000) (Albritton, C.J.) (denying petitioner's request for early termination of halfway house commitment "based on a policy which is intended to aid inmates who have undergone a Residential Drug Abuse Program"), *with Webster v. Houston*, No. 99cv137/RV/SMN (N.D. Fla. filed Feb. 14, 2000) (Vinson, C.J.) (finding "no legal 'requirement' that petitioner serve at least six months in the halfway house" and ordering the Bureau of Prisons "to reconsider the petitioner's release date ... without regard to any minimum period in the halfway house").

## CONCLUSIONS

1. Petitioner has received the relief he originally sought: that is, <u>eligibility</u> for a reduction in sentence based upon

---

[22] *Id.* at 1-2.

10

"successful completion" of a residential substance abuse treatment program, notwithstanding the imposition of a two level sentencing enhancement pursuant to Guidelines § 2D1.11.

2. By use of the permissive verb "may" in 18 U.S.C. § 3621(e)(2)(B), Congress did not <u>mandate</u> that a prisoner's sentence be reduced by the Bureau of Prisons, even upon successful completion of a residential substance abuse treatment program.

3. Beyond the limitation of any reduction in a prisoner's sentence to "not ... more than one year from the term the prisoner must otherwise serve," Congress did not specify criteria governing the exercise of discretion by the Bureau of Prisons when determining whether, and to what extent, a particular prisoner's sentence "<u>may be</u> reduced."

4. Congress did not define criteria for determining when an inmate had "successfully complet[ed] a treatment program," but instead delegated discretionary authority to make such determinations to the Director of the Bureau of Prisons. Indeed, Congress said:

> Any prisoner who, in the judgment of the Director of the Bureau of Prisons, has successfully completed a program of residential substance abuse treatment provided under paragraph (1) of this subsection, <u>shall remain in the custody of the Bureau under such conditions as the Bureau deems appropriate</u>. <u>If the conditions of confinement are different from those the prisoner would have experienced absent the completion of the treatment, the Bureau shall periodically test the prisoner for</u>

<u>substance abuse and discontinue such conditions on determining that substance abuse has recurred</u>.

18 U.S.C. § 3621(3)(2)(A) (emphasis added). Congress thus both contemplated and sanctioned the placement of inmates in halfway house environments for some period of time, following completion of the institutional portion of a substance abuse treatment program.

5. Even though this court previously found that the Bureau of Prisons abused its discretion by categorically excluding prisoners from eligibility for early release based solely on Guidelines § 2D1.11(b)(1) sentencing enhancements, that holding does not impugn the Bureau's opinion that petitioner's drug-free residency in a halfway house for a period not exceeding 180 days is an "essential element" of the substance abuse treatment program. On the contrary, that policy is not an unreasonable exercise of the discretion vested by Congress in the Director of the Bureau of Prisons.

6. If petitioner successfully completes the transitional phase of the treatment program, he will be released six to ten months earlier[23] than otherwise would have occurred — a reduction in

---

[23] *Nota bene*: The government's contention that petitioner will be released approximately six months (193 days) earlier than otherwise would have occurred is based upon the statement that "Mr. Anderson's original good conduct time release [date] was July 3, 2001." Borrero Declaration ¶ 8, at 2. However, the "Public Information Inmate Data (As of 07-10-2000)" attached to Dr. Borrero's Declaration indicates (at page 004) that petitioner's "STATUTORY RELEASE DATE (CURRENT)," *i.e.*, after allowing credit for good conduct time and prior periods of jail custody, is <u>October 3, 2001</u>. If that is a correct interpretation of the data submitted, then petitioner would be released some ten months earlier than otherwise would be the case.

12

sentence that comports with both the express language of § 3621(e)(2)(B) ("up to one year") and the ruling of the Eleventh Circuit in *Kilpatrick* (requiring consideration of inmates such as petitioner for early release, but not mandating a specific reduction of sentence).

7. Accordingly, the petition for writ of habeas corpus is due to be denied as moot. An appropriate judgment will be entered contemporaneously herewith.

Done this 11th day of August, 2000.

/s/ Inzwood Smith
United States District Judge